**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

TONYA WALKER,

      Plaintiff-Appellant,

v.

      No. 99-5159

UNITED PARCEL SERVICE, INC.,

      Defendant-Appellee.

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. CV-97-1042-BU)**

_____

Thomas L. Bright, Tulsa, Oklahoma for Plaintiff-Appellant.

Sam Reynolds Fulkerson (Peter T. Van Dyke on the brief) of McAfee & Taft,
Oklahoma City, Oklahoma for Defendant-Appellee.

_____

Before **HENRY** and **BRISCOE**, Circuit Judges, and **SHADUR**, District Judge.[*]

_____

**SHADUR**, District Judge.

_____

[*]     The Honorable Milton I. Shadur, Senior United States District Judge
for the Northern District of Illinois, sitting by designation.

Tonya Walker ("Walker") sued her employer United Parcel Service, Inc. ("UPS"), advancing federally-based claims under Title VII of the Civil Rights Act of 1964 as amended ("Title VII," 42 U.S.C. §2000e to 2000e-17) and the Family and Medical Leave Act of 1993 ("FMLA," 29 U.S.C. §2601-2654) and various tort claims under Oklahoma common law.[1] Walker's Title VII claims were based on alleged sexual harassment and on retaliation for filing a claim with the Equal Employment Opportunity Commission ("EEOC"), while her FMLA claim was based on a suspension she received for excessive absenteeism and job abandonment while she was pregnant. As for her three state law claims, Walker voluntarily dismissed two of them, and the third was dismissed via summary judgment. Walker does not appeal from that dismissal.

Walker does appeal from the district court's grant of summary judgment in favor of UPS on her federal claims. She asserts a number of grounds for reversal.

As for her Title VII claim, the district court dismissed it without prejudice because EEOC--in violation of its own regulation ("the Regulation," 29 C.F.R. §1601.28(a)(2))--failed to attach a certificate to Walker's Notice of Right To Sue ("Notice" or "right-to-sue letter") stating that it would be unable to complete its administrative processing of her charge within 180 days of its filing. After

_____

[1] This opinion's citations to each of the federal statutes simply take the form "Section--," omitting any reference to Titles 42 and 29. That should not create confusion, because there is a wide difference in the section numbering as between Title VII and the FMLA.

Walker then obtained an affidavit from an EEOC enforcement manager stating that the failure to attach the certificate was an oversight, she filed what we treat as a timely Fed. R. Civ. P. ("Rule") 59(e) motion to alter or amend the judgment. Walker now appeals the denial of that motion as well.

On Walker's FMLA claim, the district court granted summary judgment in favor of UPS after finding that Walker had no grounds for relief under the FMLA because (1) she lost no pay or benefits for the alleged violation of her FMLA rights, (2) the FMLA does not provide for nominal damages and (3) she was not entitled to any equitable relief. Walker contends that the district court erred in ruling that nominal damages are not recoverable under the FMLA.

Walker also ascribes two other errors to the district court. First, she complains of the denial of her request to add a claim for constructive discharge under Title VII as untimely, prejudicial and futile. Second, she disputes the district court's award of costs to UPS as the prevailing party.

We first hold that the district court erred in dismissing Walker's Title VII claim based on EEOC's oversight. In that respect we decline to adopt the District of Columbia Circuit's recent holding that the Regulation is invalid, siding instead with the Eleventh and Ninth Circuits in upholding the Regulation. As for the remaining bases for appeal, we agree with the district court that nominal damages are not available under the FMLA and therefore affirm the dismissal of that claim.

We also hold that the district court did not abuse its discretion in denying Walker's request to supplement her complaint with a claim for constructive discharge. But because we reverse the summary judgment for UPS on Walker's Title VII claim, we vacate the award of costs for UPS. In sum, we AFFIRM in part and REVERSE in part for the reasons set forth in this opinion.

## Background

Walker began working as a UPS driver in 1990. On August 25, 1997 she filed a charge of sex discrimination with EEOC, citing various sexist remarks by her supervisor and alleging that she was disciplined more often than male drivers. On October 3 Walker wrote to EEOC, asking that it issue her a Notice. On October 22 Walker received EEOC's right-to-sue letter, which noted that it was being issued "at the charging party's request." EEOC failed to attach a certificate, as called for in the Regulation, stating that it had determined it would be unable to complete its administrative processing of Walker's charge within 180 days.

On November 6, 1997 Walker filed suit against UPS in an Oklahoma state court. On November 25 UPS timely removed Walker's suit to the federal district court for the Northern District of Oklahoma on the basis of federal question and supplemental jurisdiction.

One month later (on December 24) UPS terminated Walker, citing

excessive absenteeism and job abandonment as of December 18. Walker filed a grievance with the local Teamsters union challenging the termination as having violated the FMLA because her absences were pregnancy-related and because she had notified her supervisor on December 18 that she was suffering from morning sickness due to her pregnancy and was unable to drive safely. UPS and the Teamsters union agreed to reduce the termination to a five-day suspension. Thus on January 12, 1998 Walker took a seven-month pregnancy related health leave of absence, with which the five-day suspension ran concurrently.

In March 1998 Walker supplemented her then pending Title VII action against UPS with a claim that the suspension violated her rights under the FMLA. Some months later, in August 1998, Walker returned to work for UPS. Finally, in consequence of what she alleged to be continuing sexual harassment and sex discrimination, Walker resigned on September 19 and began working for Federal Express.

At a district court pretrial conference on October 1, Walker's counsel made an oral request to supplement both her Amended Complaint and the Agreed Pretrial Order with a claim for constructive discharge in violation of Title VII, based on her September 19 resignation. Because the district court found that the late addition of that new claim would unduly prejudice UPS and would be futile because it too would be subject to dismissal based on the incomplete Notice, it

denied Walker's motion.

Dismissal of Title VII Claim

Section 2000e-5(f)(1) permits anyone who has filed an EEOC charge to bring a civil action either after EEOC has dismissed the charge or after 180 days if EEOC has not yet filed a civil action or entered into a conciliation agreement. Because of its early recognition that its caseload may be so heavy that it can be determined at an earlier date that no action can be taken on a charge within that 180 day period, in 1977 EEOC issued the Regulation, which authorizes its issuance of a Notice upon a charging party's request before expiration of that period if it is probable that EEOC will be unable to complete its administrative processing of the charge within that time frame. In part the regulation provides that a designated official must not only make such a determination but must also attach a written certificate to that effect to the early Notice. Because the Notice to Walker did not have such a certificate attached, the district court found that Walker's Title VII claims were not properly before it and dismissed the claims without prejudice.

Despite that "without prejudice" label, in real world terms the dismissal was <u>with</u> prejudice because any attempt by Walker to refile her claims after the district court's order was issued would be out of time (<u>Gocolay v. New Mexico Fed. Sav. & Loan Ass'n</u>, 968 F.2d 1017, 1021 (10th Cir. 1992)). That is so

because at the time of dismissal well over 300 days had passed since UPS' allegedly unlawful employment practices had occurred and well over 90 days had passed since Walker's right to sue notice was issued (Sections 2000e-5(e)(1) and -5(f)(1)), and because the dismissal was not conditioned on UPS' agreement to waive any limitations defense if Walker were to file suit again after the asserted flaw had been cured. We therefore treat the district court's order as a dismissal with prejudice, keeping in mind that "the law favors the resolution of legal claims on the merits" (Gocolay, 968 F.2d at 1021).

Walker appeals not only the district court's adverse summary judgment ruling on her Title VII claim but also the district court's denial of her "Motion To Reconsider and Vacate the Summary Judgment Granted on Plaintiff's Title VII Claims." Both the parties and the district court have spoken of the latter motion as one brought under Rule 59(e)--an inaccurate label, given the fact that at the time of its filing Walker's FMLA claims were still alive, so that there was then no final judgment in place. But when final judgment was indeed entered on December 7, 1998 (upon the dismissal of the FMLA claims as well), it was entirely appropriate at that point for the district court to treat the motion to reconsider (though filed a few days earlier) as an effective Rule 59(e) motion (see Hilst v. Bowen, 874 F.2d 725, 726 (10th Cir. 1989) (per curiam) and numerous cases cited there).

In any event, as indicated earlier, that motion was based on a corrected Notice that Walker obtained from EEOC (bearing the same date as the original Notice) and on an affidavit that she obtained from EEOC Enforcement Manager Alma J. Anderson stating that Walker's original Notice should have had the required certificate attached. On the ground that with the exercise of due diligence Walker should have been able to obtain the corrected Notice and affidavit before the entry of summary judgment, the district court declined to alter or amend that judgment.

If the only question before us were the propriety of the district court's grant of summary judgment, we would review that grant de novo, applying the same legal standard used by the district court under Rule 56(c) (NLRB v. Pueblo of San Juan, 228 F.3d 1195, 1198 (10th Cir. 2000). In those terms "summary judgment is appropriate when the evidence taken as a whole show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (id., quoting Rule 56(c)).

Matters may be made more complex when we also review the denial of a Rule 59(e) motion, a question that we regularly examine through an abuse-of-discretion lens (see, e.g., Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997)). At least one court has shifted to a de novo standard where both types of rulings are involved, apparently on the theory that a timely Rule 59(e) motion

deprives an earlier grant of summary judgment of finality so as to call for a less stringent type of review on the consequently timely appeal from the summary judgment ruling (see Perez v. Aetna Life Ins. Co., 96 F.3d 813, 819 (6th Cir. 1996), vacated for en banc hearing on other grounds, 106 F.3d 146 (6th Cir. 1997)). But we need not reach that issue, one that has not been addressed in our Circuit, for Walker succeeds even under the more demanding abuse-of-discretion standard, as to which Phelps, 122 F.3d at 1324 (citations omitted) teaches:

> [A] trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

We hold that in those terms the district court erred in dismissing Walker's Title VII claim because of EEOC's administrative oversight. Walker herself took every step required to exhaust her administrative remedies: She filed a simultaneous charge with EEOC and the Oklahoma Human Rights Commission, and her request for an early Notice was authorized by the Regulation. Then on receiving the Notice she filed suit within 90 days as the Notice (consistently with the statute) directed. Walker's right to sue is conditioned only on her taking all steps necessary for administrative exhaustion, not on EEOC's performance of its administrative duties (accord, Jefferson v. Peerless Pumps Hydrodynamic, Div'n of FMC Corp., 456 F.2d 1359, 1361 (9th Cir. 1972)).

Indeed, as a policy matter Walker should be entitled to rely in good faith on

the accuracy of a notice sent to her by a federal administrative agency. She should not be denied her day in court because of EEOC's negligence. Nor should she or her counsel, as UPS would have it, be commandeered to act as EEOC's superintendent, obligated to oversee its processing of the charge to ensure that it is following its own regulations. As Springer v. Partners in Care, 17 F.Supp.2d 133, 141 (E.D.N.Y. 1998) has put it:

> [I]t is patently evident that it would be...unfair to deny an individual plaintiff the opportunity to litigate a claim of discrimination because of the EEOC's administrative foibles, particularly in the absence of an express congressional mandate requiring that result.

Accord, Reese v. Atlantic Steel Co., 282 F.Supp. 905, 906 (N.D. Ga. 1967).

UPS' related argument that Walker somehow prevented EEOC from performing its duty to seek conciliation by requesting an early right to sue notice also fails. Of course EEOC had the authority either to accede to Walker's request or to deny it and proceed with the processing of her claim. Private parties such as Walker do not have the power to take away EEOC's enforcement authority or to force it to issue early right to sue notices (cf. EEOC v. Frank's Nursery & Crafts, Inc., 177 F.3d 448, 456 (6th Cir. 1999)("Significantly, an individual may not, in an effort to effectuate her own interests, take away the enforcement authority of the EEOC even if she wishes to withdraw her charge of discrimination")).[2]

---

[2] UPS' Br. 19 assertion that "neither Walker nor the EEOC had any information whatsoever regarding UPS's willingness to resolve the dispute through conciliation or otherwise" has a disingenuous ring: After all, UPS has

We thus reverse both the district court's grant of summary judgment in favor of UPS and its denial of Walker's Rule 59(e) motion. Because Walker merely sought to cure any technical noncompliance by EEOC (and did not seek to be relieved from any fault on her own part), and given both the preference for resolving claims on the merits and the fact that the district court's nominally without-prejudice dismissal would actually operate as a dismissal with prejudice, we hold that the district court abused its discretion in its rulings.

<u>Validity of the Regulation</u>[3]

UPS argues in the alternative that even if Walker's Title VII claims should not be dismissed because of EEOC's failure to attach the certificate required by the Regulation, Walker's Notice is nonetheless void because it was issued before the expiration of 180 days from the filing of her charge. That, according to UPS, is not permissible under the statute.

There is a split of authority among the Courts of Appeals on the validity of

---

been aware of Walker's claim since at least November 1997 and has had ample time to take conciliatory action on its own initiative if it wished to do so, without prodding from EEOC (see <u>Reese</u>, 282 F.Supp. at 906). Moreover, even if UPS had been willing to enter into a conciliation agreement, that would not change the fact that EEOC determined it did not have adequate resources to negotiate such an agreement between UPS and Walker within 180 days.

[3] This issue is so much at the forefront of employment discrimination jurisprudence that it was recently the subject of the lead article in a "Legal News" segment of United States Law Week, 69 U.S.L.W. 2259-60 (Nov. 7, 2000).

EEOC's issuance of early right-to-sue notices. Both the Eleventh Circuit[4] and the Ninth Circuit[5] have held that practice valid,[6] while the District of Columbia Circuit has recently held to the contrary.[7] After careful consideration, we side with the Eleventh and Ninth Circuits (and with the Second Circuit's pre-Regulation analysis) and elaborate on their reasoning.

When the validity of an agency regulation is at issue, we follow the two-step approach announced in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). Under the first step we determine if the statute is ambiguous. If it is not, we must give effect to the unambiguously expressed intent of Congress. If however the statute is silent or ambiguous as to the specific issue, we defer to the agency's interpretation of the statute if it is reasonable (id.).

---

[4] Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1061-63 (11th Cir. 1994).

[5] Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir. 1984) is the most recent of three decisions from that Circuit so holding, adhering to the position initially set out without reference to the Regulation in Bryant v. California Brewers Ass'n, 585 F.2d 421, 425 (9th Cir. 1978), vacated and remanded on other grounds, 444 U.S. 598 (1980).

[6] That same position was taken by the Second Circuit in Weise v. Syracuse Univ., 522 F.2d 397, 412 (2d Cir. 1975) even before adoption of the Regulation, that court also having been persuaded that it does not serve Title VII's purposes for EEOC to hold charges for 180 days when reaching conciliation during the time frame is not in the cards.

[7] Martini v. Federal Nat'l Mortgage Ass'n, 178 F.3d 1336, 1340-48 (D.C. Cir. 1999).

In this instance the precise issue is whether Title VII prohibits EEOC from issuing right-to-sue letters before the expiration of 180 days from the filing of a charge. Even Martini, 178 F.3d at 1345 agrees with the other Circuits that Section 2000e-5(f)(1) does not unambiguously address that issue--that is, it does not expressly prohibit EEOC from issuing such notices earlier. Here is the relevant part of that section:

> If a charge filed with the Commission...is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge...the Commission has not filed a civil action...or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission...shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

Congress added Section 2000e-5(f) as part of the 1972 amendments to Title VII to protect aggrieved parties from lengthy delays occasioned by administrative backlog. According to the legislative history, "the 180-day provision allows the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution" (Martini, 178 F.3d at 1345, quoting 118 Cong. Rec. 7168 (1972)(internal brackets omitted); see also Sims, 22 F.3d at 1061 ("the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog")). Given the purpose of the 180 day limit in Section 2000e-5(f)(1), the Eleventh and Ninth Circuits have

-13-

reasoned that EEOC's early right-to-sue Regulation furthered that purpose by allowing aggrieved parties to file suit even earlier if EEOC itself determined that it could not investigate the party's charge within 180 days (Sims, 22 F.3d at 1061-63; Brown, 732 F.2d at 729). Those Circuits have therefore held the Regulation to be a reasonable interpretation of the statute.

Martini, 178 F.3d at 1345 found it plausible to argue that the Regulation furthered Congress' purpose in enacting Section 2000e-5(f)(1). Nevertheless it held the Regulation invalid because it is assertedly inconsistent with a statutory provision that had not been considered by the earlier decisions, Section 2000e-5(b):

> Whenever a charge is filed by or on behalf of a person claiming to be aggrieved...the Commission...shall make an investigation thereof.

Because issuance of an early right to sue letter effectively terminates administrative processing of a charge, Martini, 173 F.3d at 1347 (citation omitted) concluded that any such issuance violated EEOC's mandate to investigate every charge filed:

> As we stated at the outset, the precise question at issue in this case is whether Congress clearly intended to prohibit private suits within 180 days after charges are filed. Because the power to authorize early private suits inevitably and impermissibly allows the EEOC to relax its aggregate effort to comply with its statutory duty to investigate every charge filed, we think the answer is yes.

> We respectfully disagree with the District of Columbia Circuit's reading of

-14-

the statute.  Congress' 1972 amendment to Section 2000e-5(f)(1) to allow aggrieved parties to file civil actions if EEOC failed to act on a charge for 180 days itself created an obvious tension with the earlier-enacted Section 2000e-5(b): Despite EEOC's stated duty to investigate every charge, Congress acknowledged that EEOC's inability to complete its performance of that duty should not deprive a private charging party of the right to institute a court action and thus terminate EEOC's jurisdiction. There was an explicit acknowledgment in the legislative history that "it will not be possible to render a decision in all cases within the time limits prescribed" (H.R. Rep. No. 92-238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137).  But at the same time, that look into the future was also coupled with the roseate view that "recourse to the private lawsuit will be the exception and not the rule" (118 Cong. Rec. 7168 (1972), ironically cited by UPS Br. 20).

It quickly became apparent that the congressional crystal ball was accurate as to the first of those statements but hopelessly clouded as to the second.  And the combination of an increasingly heavy load of Title VII charges and the inadequacy of EEOC's resources to deal with them (an inadequacy, it will be remembered, that only Congress could overcome by increased funding) led to EEOC's adoption of the Regulation just five years later, in 1977.  With nothing in Section 2000e-5(f)(1) to foreclose it (as Martini itself has acknowledged),

EEOC's realistic evaluation of the situation by adopting the Regulation must be viewed as a reasonable interpretation of the statute as amended.

Aggrieved parties must still file charges with EEOC before going to court. That comports with Title VII's original purpose of vesting initial responsibility for disposing of employment discrimination complaints with EEOC, to enable it to encourage informal conciliation. If a grievant--concerned that the 180-day period may bring nothing but delay, with no steps taken toward resolution of his or her claim--requests an early right-to-sue letter, EEOC still has the duty to review and consider the charge. And if its designated official determines that the realities of caseload and staffing will disable EEOC from completing its task in 180 days, the Regulation says it can issue the Notice. But--importantly--the official reviewing the charge retains the power to deny a claimant's request if upon review he or she determines that the parties' interests would be better served by retention of the charge for further administrative processing in which EEOC will devote some of its limited resources to seek to complete its work within 180 days. That procedure, under which EEOC has and exercises the power to determine whether or not an early right-to-sue letter is warranted, directly furthers Congress' original purpose in adopting Section 2000e-5(f)(1): protecting aggrieved individuals from undue delay by releasing them from the "administrative quagmire which occasionally surrounds a case caught in an

overloaded administrative process" (H.R. Rep. No. 92-238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137).[8]

It is relatedly important to look to a factor that <u>Martini</u> did not consider: Congress' further amendment of Title VII in 1991 without taking issue with the Regulation, which had then been in place for fully 14 years with its validity having been the subject of debate within the district courts (compare, e.g., <u>Rolark v. University of Chicago Hosps.</u>, 688 F.Supp. 401, 402-04 (N.D. Ill. 1988), noting division among the district courts on the issue and finding the Regulation valid, with <u>True v. New York State Dep't of Correctional Servs.</u>, 613 F.Supp. 27, 29-30 (W.D.N.Y. 1984), citing cases going both ways and holding the Regulation invalid)). <u>North Haven Bd. of Ed. v. Bell</u>, 456 U.S. 512, 535 (1982)(internal quotation marks and citations omitted) is among many cases repeating the familiar wisdom to be drawn from such a situation:

> Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.

See also such cases as <u>United States v. Rutherford</u>, 442 U.S. 544, 554 n. 10

---

[8]     As indicated earlier, the only flaw in the quoted language was in its use of the hopeful adverb "occasionally." But just as Congress cannot fairly be faulted for its lack of prescience, so EEOC cannot be faulted for having addressed the situation realistically when the "overloaded administrative process" turned out to be overwhelming.

(1979)).

Plainly EEOC's regulation has not escaped public or legislative notice over what has been nearly a quarter century.  To the contrary, the progress and policies of EEOC (most significantly, its inability--given its staffing level--to cope with its overwhelming backlog in terms of the statutory 180-day period) are regularly brought to Congress' attention (see, e.g., <u>Depts. of Commerce,  Justice, and State, The Judiciary, and Related Agencies Appropriations for 1999:  Hearings Before a Subcommittee of the Committee on Appropriations</u>, 105th Cong. 447-452 (1998)(statement of Paul M. Igasaki, Chairman, U.S. Equal Employment Opportunity Commission); <u>The Future Direction of the Equal Employment Opportunity Commission:  Hearing Before the Subcommittee On Employer- Employee Relations, House Comm. on Ed. and the Workforce</u>, 105th Cong. 59-62 (1998)(statement of Honorable Harris W. Fawell, Chairman, Subcommittee on Employer-Employee Relations), and <u>id</u>. 79-94 (written statement of Paul M. Igasaki, Chairman, U.S. Equal Employment Opportunity Commission)).  In recent years particular emphasis has been placed on EEOC's continuing efforts to decrease its backlog of pending charges (as well as decreasing the amount of time that charges lie pending) by implementing more efficient procedures for reviewing charges-- procedures that include the immediate dismissal of charges that appear meritless on their face so that EEOC can focus its limited resources on

charges warranting further investigation (id.).

If EEOC's effort to meet the same goal of dealing with its backlog via the Regulation had been met with congressional disfavor, it is surely reasonable to expect that a move would have been launched to repudiate the Regulation via statutory amendment. While silence on Congress' part is of course not dispositive, here it lends strong credence to finding the Regulation consistent with the statutory language and intent. And that bolsters an affirmative answer to the Chevron analysis granting deference to EEOC's reading.

Relatively early in the life of Title VII, Love v. Pullman Co., 404 U.S. 522, 526-27 (1972) warned against unnecessarily technical readings of the statute. Martini's holding that aggrieved individuals must sit on their charges until 180 days has passed, even when EEOC knows full well that it cannot complete its processing in that time, strikes us as not only imprudent as a practical matter but also as an overly strict and technical reading of a statute susceptible to more than one reasonable interpretation. We therefore uphold EEOC's reading, one that has been at least implicitly accepted by Congress for over 23 years.

Nominal Damages Under the FMLA

Walker's FMLA claim is based solely on the five-day suspension she received for excessive absenteeism and job abandonment. At a November 18, 1998 hearing the district court found (and both parties agreed) that Walker had

suffered no actual damages as a result of that suspension because it ran concurrently with her disability leave and because she therefore lost no wages or benefits as a result. Because the district court had previously denied Walker's request to add a claim for constructive discharge (and, despite Walker's present argument on appeal, she then asserted that claim only under Title VII and not the FMLA anyway), she advanced no grounds for equitable relief under the FMLA either. Instead Walker's last resort was a request for nominal damages. Ruling that the FMLA does not provide for such nominal damages, the district court found that Walker had suffered no injury redressable under the FMLA and granted summary judgment to UPS.

Before us Walker does not contest the district court's finding that she suffered no actual damages as a result of UPS's alleged violation of her rights under the FMLA. Rather she appeals only the ruling that nominal damages are not recoverable under the FMLA, which requires our interpretation of a federal statute--a question of law that we review de novo (Ho v. Greene, 204 F.3d 1045, 1052 (10th Cir.2000)). We agree with the district court's resolution of that question.

Section 2617(a)(1)(A)(i) specifies that any employer who violates the FMLA shall be liable for damages equal to the amount of:

> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

-20-

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee.

Because recovery is thus unambiguously limited to actual monetary losses, courts have consistently refused to award FMLA recovery for such other claims as consequential damages (Nero v. Industrial Molding Corp., 167 F.3d 921, 930 (5th Cir. 1999)) and emotional distress damages (Lloyd v. Wyoming Valley Health Care Sys., Inc., 994 F.Supp. 288, 291-92 (M.D. Pa. 1998)). Thus Cianci v. Pettibone Corp., 152 F.3d 723, 728-29 (7th Cir. 1998) held that a plaintiff had no claim under the FMLA where the record showed that she suffered no diminution of income and incurred no costs as a result of an alleged FMLA violation.

Invoking an attempted analogy to Title VII precedents, Walker argues that nominal damages should be allowed in FMLA cases because, just as under Title VII, nominal damages would allow plaintiffs whose rights are violated but who do not suffer any compensable damages to vindicate those rights. While it is true that recent cases have rejected the "no harm, no foul" argument in the Title VII context (see, e.g., Hashimoto v. Dalton, 118 F.3d 671, 675-76 (9th Cir. 1997)), that was not always so.

Before the 1991 amendments to the Civil Rights Act, nominal damages (as well as damages for pain and suffering or punitive or consequential damages)

were not available for Title VII violations, because the statute then provided for equitable and declaratory relief alone (see Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1347 (10th Cir. 1994)). Nominal damages became available only after 42 U.S.C. §1981a ("Section 1981a," which governs damages recoverable in cases brought under Title VII) was amended to allow for compensatory damages in such actions (nominal damages are generally considered to be compensatory in nature).

Walker's attempted argument by analogy fails because of the critical difference in statutory language between Section 2617(a)(1) and the amended Section 1981a. In contrast to the latter, the earlier quoted Section 2617(a)(1) does not provide for compensatory damages in general, but is instead expressly limited to lost compensation and other actual monetary losses. Because nominal damages are not included in the FMLA's list of recoverable damages, nor can any of the listed damages be reasonably construed to include nominal damages, Congress must not have intended nominal damages to be recoverable under the FMLA.

We are obligated to honor that intent and therefore to countenance the award of only those elements of damages that Congress has deemed appropriate to redress violations of the FMLA. Because Walker has admittedly suffered no actual monetary losses as a result of UPS' asserted violation of the FMLA and has no claim for equitable relief, she has no grounds for relief under that statute.

Hence UPS is entitled to a judgment as a matter of law on that claim, and the district court's ruling to that effect must be affirmed.[9]

### Constructive Discharge

As stated earlier, Walker also complains of the district court's rejection of her oral request, at the October 1, 1998 pretrial conference, to add a Title VII constructive discharge claim based on her resignation from UPS 12 days earlier. Rule 15(d) gives trial courts broad discretion to permit a party to serve a supplemental pleading setting forth post-complaint transactions, occurrences or events (Gillihan v. Shillinger, 872 F.2d 935, 941 (10th Cir. 1989)). Such authorization "should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants" (id.). Even so, such notions "are addressed to the sound discretion of the trial court" (id.).

Because Walker moved to add her claim for constructive discharge so late in the day in terms of the original issues in the case, the district court found that UPS would be unduly prejudiced if Walker's motion was granted: Discovery was closed, UPS was ready for trial or for the alternative of summary judgment, and it

---

[9]     Walker seeks to draw support for her position from McDonnell v. Miller Oil Co., 134 F.3d 638 (4th Cir. 1998), in which a jury had indeed awarded $1 in nominal damages for a violation of the FMLA. But McDonnell dealt with a wholly different issue (one relating to attorneys' fees), with the propriety of a nominal damages recovery being neither a subject of the appeal nor an issue that was even discussed by the Court of Appeals. That case provides Walker no comfort.

had in fact moved for summary judgment on all of Walker's claims. Walker's proposed new claim would have required additional discovery and precluded the entry of a final judgment order when the original claims had been resolved via summary judgment or trial.[10]

Under those circumstances we do not view the district court's refusal to allow a supplemental claim as an abuse of discretion (see Doelle v. Mountain States Tel. & Tel., 872 F.2d 942, 947 (10th Cir. 1989 (per curiam)). In any event, though, that issue seems likely to disappear as a practical matter because in the interim Walker has filed a separate EEOC charge under Title VII based on the alleged constructive discharge, has received another right-to-sue letter and has filed a separate suit. That action has been stayed pending the outcome of this appeal. Because we are reversing the district court's grant of summary judgment on Walker's other Title VII claims and remanding for further proceedings, it is of course within the district court's discretion to consolidate the claims.[11]

---

[10] In addition, the district court relied on the perceived futility of a new Title VII claim because of its view as to early EEOC right-to-sue letters. Because we have rejected that view, we attach no weight to that additional reason.

[11] We need not address Walker's contention that we should reverse the district court's grant of summary judgment on her FMLA claim in this case because she is entitled to the equitable remedy of reinstatement due to the constructive discharge, given our affirmance of the district court's denial of Walker's motion to supplement. We note, however, that the record reflects that the district court understood the constructive discharge claim to be raised only under Title VII, not under both Title VII and the FMLA.

## Fee Award

Finally ,Walker appeals the district court's award of costs (including fees) to UPS as the prevailing party, an issue reviewed in abuse-of-discretion terms (cf. Callicrate v. Farmland Indus., Inc., 139 F.3d 1336, 1339 (10th Cir. 1998)). At this stage UPS no longer qualifies for prevailing party status, a determination that must await further proceedings. We therefore vacate the award and remand the issue for further consideration on the resolution of Walker's Title VII claims (see North Texas Production Credit Ass'n v. McCurtain County Nat'l Bank, 222 F.3d 800, 819 (10th Cir. 2000, vacating an award of attorney's fees where summary judgment reversed).

## Conclusion

In sum, we REVERSE the district court's dismissal of Walker's Title VII claims by reason of EEOC's failure to attach a certificate stating that it would be unable to complete its administrative processing in 180 days. In that respect we REVERSE the district court's determination that EEOC's early right-to-sue Regulation is invalid. Accordingly we REMAND Walker's Title VII claims for further proceedings on the merits. We AFFIRM the district court's dismissal of Walker's FMLA claim as well as the district court's denial of Walker's motion to supplement her complaint and pre-trial order with a claim for constructive discharge under Title VII. Finally, in light of this opinion we VACATE the

district court's award of fees in favor of UPS and REMAND for future

determination when the Title VII claims are resolved.