**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TONYA WALKER, an individual,

    Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE OF
AMERICA, INC., sued as: United
Parcel Service, Inc.,

    Defendant-Appellee.

No. 02-5097

(D.C. No. 97-CV-1042-EA)

(N.D. Oklahoma)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **HENRY** , and **HARTZ** , Circuit Judges.

---

    Plaintiff Tonya Walker appeals the district court's grant of summary

judgment in favor of her former employer, Defendant United Parcel Service, Inc.

(UPS), on her claims for (1) sexual harassment and retaliation under Title VII of

the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and (2)

retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-

2654. Plaintiff also appeals the district court's award of costs to UPS, arguing

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

that the cost award should be reversed along with the grant of summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiff began working for UPS as a full-time package driver in February 1990. She claims that during the course of her employment, she was subjected to a litany of offensive gender-related jokes, comments, and conduct by her supervisors and coworkers that created a sexually hostile working environment. Plaintiff complained about some of this behavior to her union steward, although she did not ask him to file a grievance on her behalf, and he did not do so. She asserts that she also complained generally about sexual harassment to two different supervisors in 1997, but admits that she did not provide them with any specifics. Apparently no action was taken by UPS with respect to the alleged harassment.

On August 25, 1997, Plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC), citing sexist remarks allegedly made by her supervisor and asserting that she was disciplined more frequently than her male coworkers. After obtaining a right-to-sue letter from the EEOC, she sued UPS on November 6, 1997, alleging, among other things, sexual harassment and retaliation under Title VII.

On December 24, 1997, UPS terminated Plaintiff's employment, claiming excessive absenteeism and job abandonment. Plaintiff, who was pregnant at the time, filed a grievance with her union asserting that the absences were pregnancy-related, and arguing that the termination violated her rights under the FMLA.

It appears that Plaintiff continued working at UPS while the grievance was being processed. On January 12, 1998, she began a seven-month pregnancy-related leave of absence from work. While Plaintiff was on pregnancy leave, UPS and the union settled her grievance by reducing the termination to a five-day suspension, which ran concurrently with Plaintiff's leave of absence. It is undisputed that Plaintiff lost no pay as a result of the "termination" and subsequent suspension. Nevertheless, in March 1998 Plaintiff amended her pending Title VII sexual-harassment and retaliation complaint to add a claim alleging that the suspension violated her rights under the FMLA.

Plaintiff returned to UPS from her leave of absence on August 17, 1998. She claims that upon her return she was subjected to more harassment and "near daily disciplinings" for two weeks, which did not stop until she gave UPS a two-week notice of her intent to quit. On September 18, 1998, Plaintiff resigned from UPS and began working for Federal Express. Plaintiff ultimately filed a separate lawsuit against UPS, alleging that she was constructively discharged in retaliation for exercising her rights under the FMLA and Title VII.

In July 1998 UPS moved for summary judgment on Plaintiff's Title VII and FMLA claims. (The constructive discharge claims were not at issue in the motion.) The district court granted the motion, finding that it lacked jurisdiction over the Title VII claims because Plaintiff had failed to exhaust her administrative remedies, and ruling that the FMLA claim failed because Plaintiff suffered no damages as a result of the five-day suspension. On appeal we affirmed the district court's FMLA ruling but reversed its Title VII ruling. *See Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1271-79 (10th Cir. 2001) (*Walker I*). We remanded the Title VII claims for further proceedings on the merits. *See id.* at 1279.

Following our decision in *Walker I*, the district court consolidated the remanded Title VII sexual-harassment and retaliation claims with Plaintiff's then-pending constructive discharge claims. UPS subsequently moved for summary judgment on the consolidated claims. The district court once again granted summary judgment, finding that (1) Plaintiff's sexual harassment claim failed because Plaintiff was not subjected to a sexually hostile work environment, and (2) Plaintiff's Title VII and FMLA retaliation claims failed because Plaintiff was not constructively discharged. The court also awarded costs to UPS. Plaintiff now appeals those rulings.

## II. STANDARD OF REVIEW

"We review a decision granting summary judgment de novo, using the same legal standard applicable in the district court." *Mesa v. White*, 197 F.3d 1041, 1043 (10th Cir. 1999). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party is entitled to summary judgment '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (brackets in *Penry*)). "When applying this standard, the court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Id.*

## III. DISCUSSION

### A. Sexual harassment

#### 1. *Hostile work environment*

Plaintiff argues that the district court erred in failing to consider much of her evidence of sexual harassment, and in finding as a matter of law that she was not subjected to an objectively hostile work environment at UPS.

"For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry*, 155 F.3d at 1261 (internal quotation marks omitted). "The plaintiff must produce evidence that she was the object of harassment because of her gender." *Id.* "In deciding whether or not a hostile environment existed, it is necessary to look to all the circumstances involved in the situation. These may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance,'" *Nieto v. Kapoor*, 268 F.3d 1208, 1218 (10th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)), but "no single factor is required." *Harris*, 510 U.S. at 23. "While the plaintiff must make a showing that the environment was both objectively and subjectively hostile, she need not demonstrate psychological harm, nor is she required to show that her work suffered as a result of the harassment." *Penry*, 155 F.3d at 1261.

Plaintiff points to a number of incidents that allegedly occurred during the course of her employment at UPS and argues that those incidents were sufficiently severe or pervasive to create an actionable hostile work environment.

The district court considered only six of the incidents in ruling on UPS's summary-judgment motion, despite the fact that UPS in its supporting brief assumed (but did not admit) that all the alleged incidents occurred, citing to Plaintiff's sworn interrogatory responses as the source of the allegations. UPS's position was that even if every incident occurred, there was no hostile work environment as a matter of law. Apparently the court considered only six of the incidents because Plaintiff failed to point to additional evidence in her summary-judgment response that the remaining incidents occurred. We agree with Plaintiff that this was error; Plaintiff was not required to come forward with additional evidence to support allegations that UPS did not dispute, when the supporting evidence was already cited in UPS's summary-judgment brief. On appeal UPS does not defend the district court's consideration of only six of the alleged incidents, and does not argue that our review should be confined to only those six incidents.

We disagree, however, with Plaintiff's contention that the district court erred when it did not consider additional incidents that allegedly occurred following Plaintiff's return to UPS from pregnancy leave in August 1998. As a review of the summary-judgment pleadings makes clear, Plaintiff did not argue in district court that those incidents were relevant to her sexual harassment claim; accordingly, we will not consider them on appeal. *See Farmers Ins. Co., Inc. v.*

-7-

*Hubbard*, 869 F.2d 565, 570 (10th Cir. 1989) ("This court will generally not address issues that were not considered and ruled upon by the district court.").

We therefore consider the following alleged conduct identified in Plaintiff's opening brief on appeal in reviewing the propriety of summary judgment here:

1.    In October 1990 a male supervisor "leered" at Plaintiff while she was wearing her street clothes and told her, "'[D]amn, you sure look a hell of a lot nicer in that than in those browns.'"

2.    While she was driving with male supervisors they would make "occasional comments about certain sexual features of other women," *i.e.*, the supervisor would refer to a woman's "big tits." (No date is provided.)

3.    A male supervisor told Plaintiff that the job was "'just too hard on a woman,' and suggested if her husband could not care for her she might find a 'sugar daddy.'" (No date is provided.)

4.    A male coworker "motion[ed] with his hands as if measuring [Plaintiff's] hips." (No date is provided.)

5.    In 1996 a male supervisor told Plaintiff "he could not blame a dog for wanting to bite her on the buttocks."

6.    In March 1997 coworkers laughed when Plaintiff "ate a banana as a metaphor for female oral gratification of a man."

7.    In the spring of 1997 two male supervisors included Plaintiff "in a conversation during which they told a joke using a piece of paper that symbolized a man's penis."

8.    In the summer of 1997 a male coworker "put his arm around [P]laintiff and invited her to his birthday party saying[,] '[W]e'll just get drunk and see what happens from there.'"

9. A male supervisor told Plaintiff that her coworkers "might help her if she rolled up her shorts and would undo her UPS blouse." (Plaintiff testified at her deposition that this occurred in the summer of 1997.)

10. In June 1997 a male supervisor showed Plaintiff "a photograph of a birthday cake depicting a naked woman."

11. In June 1997 another male supervisor told Plaintiff that if "she would 'bat' her eyes and do some 'sweet talking' she might get a [different] male supervisor . . . to allow her to drive a different truck."

12. In August 1997 two male coworkers asked Plaintiff "whether she had 'condoms or crotchless panties' in her purse."

13. In October 1997 Plaintiff learned from a male supervisor "that he had been asked by another UPS manager whether or not he had impregnated [Plaintiff]."

UPS concedes that the foregoing incidents are gender-related and does not challenge their admissibility. Its sole contention is that considered as a whole, these alleged incidents are insufficiently severe or pervasive as a matter of law to create a sexually hostile work environment.

"[O]ur precedent underscores the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (internal quotation marks omitted). Although this is a close case for summary judgment, the comments and conduct at issue here fall within the spectrum of what we have previously held to be sufficient for a rational jury to find an actionable hostile work environment. *See Smith v. Northwest Fin.*

*Acceptance, Inc.*, 129 F.3d 1408, 1413-15 (10th Cir. 1997) (jury reasonably could find that six comments over 23-month period created a hostile environment; comments included a supervisor, within earshot of plaintiff's coworkers, telling plaintiff to "get a little this weekend" so that she would "come back in a better mood"; calling her a "sad piece of ass"; and telling her she "would find a decent man if [she] just quit dating Mexicans"); *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098-1102 (10th Cir. 1999) (reversing summary judgment as jury could find hostile environment where plaintiff heard male coworker compare his wife to Playboy magazine, describe a dream involving a naked woman, make frequent derogatory comments about women, and tell other employees that plaintiff was planning to file a sexual harassment suit against him, and where plaintiff alleged that such conduct caused her to be ostracized by her coworkers and impeded her ability to do her job).

We note that an actionable hostile work environment requires objectionable conduct that is "severe *or* pervasive," *Penry*, 155 F.3d at 1261 (emphasis added); the test is disjunctive, and either element provides an independent ground for finding a hostile work environment. *Smith*, 129 F.3d at 1415; *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998). Even assuming that UPS is correct that, when viewed in the context of the work environment at UPS, the above-cited incidents were not cumulatively severe (an issue we do not address),

there is sufficient evidence for Plaintiff to survive summary judgment on the issue of pervasiveness. Although UPS asserts that the conduct at issue occurred over a seven-year period and is therefore not pervasive as a matter of law, at least eight of the thirteen incidents occurred over an eight-month period in 1997. Under the circumstances, we believe that a rational jury could find that the alleged harassment was sufficiently pervasive to create an objectively hostile work environment. *Cf. Smith*, 129 F.3d at 1415 (pervasiveness inquiry requires analysis of the "number, sequence, and timing of the conduct"); *see id.* (six offensive gender-related statements over 23-month period could reasonably be found pervasive); *cf. Penry*, 155 F.3d at 1263 (gender-related comments to plaintiff in three-year period "too few and far between to be considered sufficiently severe or pervasive" (internal quotation marks omitted)).

Finally, we believe that Plaintiff has pointed to sufficient evidence to survive summary judgment on the subjective prong of the test. *See Penry*, 155 F.3d at 1261 ("plaintiff must make a showing that the environment was both objectively and subjectively hostile"). As discussed more fully below, Plaintiff complained about some of the incidents to her union steward, and informed two different supervisors in the summer of 1997 (when most of the incidents allegedly occurred) that she felt she was being sexually harassed. Viewed in the light most

favorable to Plaintiff, this evidence indicates that she subjectively perceived her work environment to be hostile.

Accordingly, we hold that the district court erred when it granted summary judgment to UPS on the hostile-work-environment issue.

2. *Affirmative defense*

As it did in the district court, UPS argues that even if Plaintiff was subjected to a hostile work environment, it is shielded from liability under the affirmative defense outlined in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Because the district court ruled that summary judgment was appropriate on the hostile-work-environment issue, it did not address the *Faragher/Ellerth* defense. We now turn to that issue.

Under *Faragher* and *Ellerth* an employer is vicariously liable for the harassing acts of its supervisory employees, but it may escape liability if it can prove a two-pronged affirmative defense. *See Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. The defense, however, "can only be raised if 'no tangible employment action [wa]s taken' by the harassing supervisor against the plaintiff employee." *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 (10th Cir. 2001) (quoting *Faragher*, 524 U.S. at 807) (brackets in *Harrison*)). Plaintiff does not dispute UPS's assertion that it took no tangible employment action against her.

Therefore, under *Faragher* and *Ellerth* UPS can escape liability if it can establish, by a preponderance of the evidence, that (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. To succeed in this appeal, UPS must demonstrate that there are no material issues of fact and that it is entitled to judgment as a matter of law on both prongs of the defense. *See Harrison*, 248 F.3d at 1024-1026 (defendant must prove both prongs of defense to prevail); *Ellerth*, 524 U.S. at 765 (affirmative defense "comprises two necessary elements").

UPS argues that both prongs of the *Faragher/Ellerth* defense are met here. It asserts that under the first prong it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765, because it had promulgated a sexual harassment policy that was in effect during Plaintiff's employment. This policy defined sexual harassment and contained the following "Reporting Procedure":

> If you believe you have been the subject of sexual harassment, or if you are aware of a situation that could constitute sexual harassment, immediately *notify your supervisor, or Human Resources manager* (who is the designated Affirmative Action Officer in your district). The matter will be investigated in a confidential manner.

United Parcel Service will take prompt corrective action against sexual harassment. Anyone who is found, upon investigation, to have engaged in sexual harassment will be subject to appropriate discipline up to and including termination of employment and may be subject to personal legal and financial liability. This policy applies to all UPS employees.

Aplt's App. at 139 (emphasis added). UPS further asserts that under the second prong of the defense, Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise," *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765, because she failed to lodge a proper complaint under its sexual harassment policy.

Plaintiff counters that she properly complained about sexual harassment, because she (1) informed her union steward about a number of the allegedly harassing incidents, and (2) complained in 1997 to two supervisors about sexual harassment. We agree with UPS that Plaintiff's complaints to the union steward—who is neither a "supervisor" nor a "Human Resources manager"—were not reasonable attempts to complain about sexual harassment at UPS. Nevertheless, a rational jury could infer that she reasonably complained about sexual harassment to a supervisor.

According to Plaintiff's interrogatory responses, in July 1997 she spoke with Mark Kelly, who UPS admits is a supervisor within the meaning of its sexual harassment policy. She stated that she complained to Mr. Kelly

about unfair treatment and sex harassment. Plaintiff explained to Mark Kelly that other drivers are continually getting away with things that she was suspended for. Plaintiff explained to Mark Kelly that she believed Hally Price [one of Plaintiff's supervisors] does not like women in his workplace including [P]laintiff. Mark Kelly immediately began defending Hally Price and making excuses for the way things are done around UPS. Mark Kelly also said to [P]laintiff[,] "If a person fakes as many injuries as [the [P]laintiff does] they can expect to have some troubles somewhere along the way.

Aplt's App. at 278.

Plaintiff testified at her deposition about her conversation with Mr. Kelly:

Q. [Y]ou just came up and said, I'm being unfairly treated and sexually harassed, and left it at that; is that what you're telling me?

A. I told him about the discrimination part of it, how he seems to always single me out and let some of the guys get away with things. And Mark Kelly started defending him. So at that point, I didn't feel like it was going to be beneficial to tell him anymore . . . because he was already defending him on that account.

. . . .

Q. With respect to sexual harassment, did you ever tell him anything other than, I think I'm being sexually harassed?

A. No.

Q. You never gave him any detail, did you?

A. No.

Aplee's Supp. App. at 60-61.

Construing all reasonable inferences in favor of Plaintiff, the above-cited evidence indicates that Plaintiff complained generally about "sexual harassment"

-15-

to Mr. Kelly. UPS focuses on the fact that Plaintiff failed to provide details of the harassment. But a rational jury could conclude that her failure to provide details to Mr. Kelly was not unreasonable in light of his hostile response to her general complaint of sexual harassment (according to Plaintiff he "defend[ed]" a fellow supervisor and "ma[de] excuses" for practices at UPS) and the fact that he did not solicit such details from her. Accordingly, viewing the evidence in the light most favorable to Plaintiff, UPS was not entitled to summary judgment on the *Faragher/Ellerth* defense.

B. Retaliation

Plaintiff argues that the district court erred when it granted summary judgment on her retaliation claims under Title VII and the FMLA. We review such claims under the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (Title VII); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 208 (10th Cir. 1997) (FMLA). Under that familiar standard, Plaintiff initially must establish a prima facie case, which UPS may rebut by offering a legitimate nondiscriminatory reason for the adverse employment action; if UPS does so, the burden shifts back to Plaintiff to show that the asserted reason is pretextual. *See Wells*, 325 F.3d at 1212; *Richmond*, 120 F.3d at 208.

To establish a prima facie case of Title VII or FMLA retaliation, Plaintiff must show that (1) she engaged in protected activity under the applicable act; (2) she subsequently suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Wells*, 120 F.3d at 1213; *Richmond*, 120 F.3d at 208-09. The district court found that Plaintiff's claims under both statutes failed because she presented insufficient evidence of her asserted adverse action—constructive discharge. Plaintiff contends that this was error, and also appears to argue that the district court erroneously ignored her other alleged adverse action—her "termination," which was subsequently reduced to a five-day suspension and served concurrently with her pregnancy leave, with no monetary loss to Plaintiff—when it rejected her Title VII retaliation claim. We address each argument in turn.

1. *Constructive discharge*

"Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (internal quotation marks omitted). "Essentially, a plaintiff must show that she had *no other choice* but to quit." *Id.* (internal quotation marks omitted). "The conditions of employment

must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant." *Id.* (internal quotation marks omitted). "If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Heno v. Sprint/United Mgmt. Co.* 208 F.3d 847, 858 (10th Cir. 2000) (internal quotation marks omitted).

In the district court Plaintiff pointed to several incidents that allegedly occurred during a two-week period following her return to UPS from pregnancy leave, and argued that these incidents compelled her to resign. As identified in her appellate brief, those incidents are (1) supervisors "constantly criticized and disciplined" Plaintiff "for minor infractions supervisors ordinarily ignored" (although she has pointed to no specific examples); (2) a male supervisor initially refused Plaintiff's request to return to town to use a restroom while they were delivering packages along a rural route, suggesting instead that she "go squat" behind the truck or "find a tree somewhere" (although she admitted that he drove her to town to use the restroom when she rejected his suggestion); (3) the same supervisor suggested Plaintiff urinate "into a 2 quart pop bottle" while making deliveries on the rural route; (4) a supervisor, upon seeing Plaintiff get a dolly to unload packages, said "oh bull shit, you know you don't need that dolly" (although she admitted that he did not prevent or forbid her from using the dolly, and she did in fact use the dolly); and (5) a supervisor failed to take corrective

action to discipline a UPS driver who made a crude comment regarding Plaintiff's pregnancy (although she pointed to no evidence indicating that the supervisor heard the comment or that she complained to anybody about it).

The conditions at UPS described by Plaintiff were not such that a reasonable employee would have felt compelled to resign. Moreover, rather than her resignation being compelled, the evidence indicates that her resignation was entirely a product of her "own free will," *Heno*, 208 F.3d at 858 (internal quotation marks omitted). Plaintiff fails to point to any evidence that she complained to anyone at UPS about her treatment following her return from her seven-month pregnancy leave, or otherwise attempted to alleviate her allegedly "intolerable" working conditions; this failure undermines her contention that she had "*no other choice* but to quit." *Sanchez*, 164 F.3d at 534. Also, she first procured a job at Federal Express, then gave UPS a two-week notice of her intent to quit, before continuing to work at UPS until September 18, 1998, when she left for her new job. *Cf. Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (whether employee is "permitted to select the effective date of resignation" is a factor indicating that resignation was not a constructive discharge (internal quotation marks omitted)). Accordingly, we hold that the district court did not err when it ruled that Plaintiff was not constructively discharged.

## 2. *Termination/suspension as adverse action*

Next, Plaintiff appears to argue that the district court erred in not considering her retaliation claim under Title VII that alleged as an adverse action the termination/suspension.  (She does not contend that the termination/suspension is a basis for her claim under the FMLA.)  UPS fails to address this argument in its Answer Brief, although it is clear from the record that the claim was at issue below and briefed by both parties in the district court.  The district court also made no reference to this claim in its order granting UPS summary judgment on all Plaintiff's claims.  Under the circumstances we believe it is appropriate for the district court to address in the first instance Plaintiff's contention that she was terminated (and subsequently suspended, with no monetary loss to her) on December 24, 1997, in retaliation for her November 6, 1997 Title VII lawsuit.  We accordingly remand for consideration of the claim, expressing no opinion about its merits.

### C. Costs

Finally, Plaintiff appeals the district court's award of costs to UPS as the prevailing party.  Because UPS no longer qualifies for prevailing party status (a determination that must await further proceedings), we vacate the award and remand the issue for further consideration upon the resolution of Plaintiff's Title VII claims.  *Walker I*, 240 F.3d at 1279.

IV. **CONCLUSION**

We REVERSE the district court's grant of summary judgment on Plaintiff's sexual harassment claims, and AFFIRM its grant of summary judgment on her constructive discharge claims under Title VII and the FMLA. We VACATE the district court's award of costs in favor of UPS. We REMAND for further proceedings consistent with this opinion.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge