**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 23 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GREGORIO MESA,

      Plaintiff-Appellant,

v.

ANTHONY WHITE, District Attorney, individually and in his official capacity; MANUEL SERNA, County Commission Chairman, individually and in his official capacity; ZEKE SANTA MARIA, County Commissioner, individually and in his official capacity; CARL SCHOLL, County Commissioner, individually and in his official capacity; STEVE AMLAND, Assistant District Attorney, individually and in his official capacity,

      Defendants-Appellees.

No. 98-2254

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-96-418-HB/LCS)

---

Submitted on the briefs:

Gregorio Mesa, pro se.

Garnett R. Burks, Jr., of Sage and Burks, P.C., Las Cruces, New Mexico, and Timothy S. Hale, of Riley, Shane & Hale, P.A., Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **HENRY** , **BARRETT** , and **PORFILIO** , Circuit Judges.

---

**BARRETT** , Senior Circuit Judge.

---

Plaintiff Gregorio Mesa appeals from the district court's grant of summary judgment in defendants' favor on Mesa's claim under 42 U.S.C. § 1983 alleging they violated his First Amendment right to speak at a public meeting. We review a decision granting summary judgment de novo, using the same legal standard applicable in the district court. *See Anderson v. Coors Brewing Co.* , 181 F.3d 1171, 1175 (10th Cir. 1999). Moreover, "[i]n cases involving the First Amendment, the de novo standard is appropriate . . . for the further reason that . . . an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Horstkoetter v. Department of Pub. Safety* , 159 F.3d 1265, 1270 (10th Cir. 1998) (internal quotations omitted). [1]

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of

(continued...)

**I.**

Because this matter comes to us on appeal from a grant of summary judgment, we present the facts in the light most favorable to Mesa. Mesa is a former county commissioner of Grant County, New Mexico. In 1993, while he was a commissioner, the county commission voted to terminate the employment of Luis Cardoza, the county manager. Mesa voted for and was strongly in favor of Cardoza's termination. In January 1995, defendants Manuel Serna and Zeke Santa Maria took office as commissioners, and the commission voted to fire the new county manager and rehire Cardoza as interim county manager. Mesa, who was no longer a commissioner, asked to speak during the public comment period of the next commission meeting on February 16, and his written request stated that he wanted to discuss "Luis Cardoza." He was placed on the meeting agenda, with his topic of discussion listed as "presentation regarding Luis Cardoza."

Meanwhile, on February 13, defendant Steve Amland, an assistant district attorney, met with Cardoza, who, as interim county manager, could approve or disapprove agenda items. They discussed whether Mesa's request to speak was

---

[1](...continued)
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-3-

too broad and vague under County Resolution No. 93-11-18, requiring in relevant part as follows:

> The matter to be presented [for an item to be included on the meeting agenda] must be stated with sufficient specificity so as to apprise the Commissioners and allow them to gather any information necessary to discuss the matter. No person shall be placed on the agenda who does not provide a specific matter to be presented.

R. Vol. I, Doc. 63, Ex. B. Following further research on the issue, Amland concluded that Mesa's request was too vague and broad. He also concluded that the subject Mesa wished to discuss could potentially fall under the categories of "personnel" (apparently because the commissioners were considering rehiring Cardoza on a permanent basis) and "litigation" (apparently because Cardoza had claims against the county related to his termination), which he thought should be discussed at a closed meeting as provided by New Mexico's Open Meetings Act, N.M. Stat. Ann. § 10-15-1 (Michie 1978). He informed Cardoza of the results of his research and recommended to the commissioners that they not allow Mesa to speak at the February 16 meeting, although he also warned them that Mesa might have a constitutional right to speak. Although Mesa had sent the commissioners a letter on February 10 stating he would file civil and criminal charges against them if they prohibited him from speaking, the commissioners accepted Amland's recommendation and prohibited Mesa from speaking at the meeting.

-4-

Mesa then filed this § 1983 action alleging that by prohibiting him from speaking at the meeting, defendants had violated his First Amendment right of free speech. Amland and defendant Anthony White, the district attorney and Amland's supervisor, jointly moved for summary judgment, Amland on the ground of qualified immunity and White on the grounds that there was no evidence he failed to train Amland (as Mesa alleged), and that he was not involved in denying Mesa the opportunity to speak. Amland and White also moved for dismissal of the claims against them in their official capacities on Eleventh Amendment immunity grounds. The three defendant commissioners moved for summary judgment on the basis of qualified immunity. Mesa opposed all of these motions, but did not file any dispositive motions himself.

The district court granted Amland and White's motion to dismiss the official capacity claim against them on Eleventh Amendment grounds, and Mesa does not challenge this ruling on appeal. The district court also granted summary judgment to all defendants, though not specifically on the basis of qualified immunity. The court held that there was no First Amendment violation because defendants' restriction of Mesa's speech was a permissible, content-neutral time,

place and manner restriction. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). [2]

On appeal, Mesa raises two issues: (1) the New Mexico Open Meetings Act did not form a legitimate basis for defendants' restriction on his speech; and (2) there is a disputed issue of fact as to whether defendants prevented him from speaking in a public forum based on his viewpoint. [3]

## II.

Courts use a three-step framework for analyzing the constitutional protections afforded to free speech rights. *See Cornelius v. NAACP Legal*

---

[2] In granting summary judgment, the district court discussed Amland's actions, concluded he did not violate Mesa's rights, and then concluded the defendant commissioners did not violate Mesa's rights by relying on Amland's advice. The court did not mention White.

Because defendants' allegedly unconstitutional actions generally are interrelated, on appeal, we refer to them jointly and do not attempt to sort out possible individual liability or nonliability. We also do not address White's separate argument that he should not be liable for failure to train since the district court never addressed that issue.

[3] Mesa also contends on appeal that the county resolution and the Open Meetings Act are unconstitutional facially and as applied to him as prior restraints on speech or content-based regulations of speech. We will not consider these issues because he does not present any argument in support of them, instead only incorporating by reference his arguments raised in the district court. "[A]rguments not set forth fully in the opening brief are waived . . . ." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998); *see also Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998).

*Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985); *Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997). The first step is to determine whether Mesa's claim involves protected speech, and there is no question that it does. The second step is to determine what type of forum the county commission meeting is because that determination defines in large part the extent to which a government may limit speech in that forum and establishes the standard for judicial review; i.e., whether a heightened or reasonableness standard applies. *See id*. The district court held that the meeting was a designated public forum, and none of the parties disputes that determination. We therefore examine defendants' regulation of Mesa's speech under a heightened scrutiny standard. The district court noted the two possible heightened standards as follows:

> In this case, the Commission designated the February 16, 1996 meeting a public forum when the Commission intentionally opened it to the public. Thus, by creating this forum, the Commission became bound by the same standards that apply in the case of a traditional public forum. As the Supreme Court held in *Perry*, content-neutral time, place and manner restrictions are permissible if they are narrowly drawn to achieve a significant governmental interest and if they allow communication through other channels. [460 U.S. at 45.] However, content-based exclusions must be narrowly tailored to effectuate a compelling governmental interest. *Id.*

District court order at 8; *see also Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 641-42 (1994) (explaining reasons for different levels of heightened scrutiny).

The final step is to determine whether the justifications for prohibiting

Mesa's speech at the meeting satisfy the requisite standard. This step actually has

two subparts. First, courts must determine whether the regulation was content

based or content neutral, which establishes whether a strict scrutiny or

intermediate standard of review is applied. *See Perry Educ. Ass'n*, 460 U.S. at

45. The district court held that the restriction on Mesa's speech was content

neutral and applied the intermediate standard of scrutiny, requiring only that the

restriction serve a significant government interest. Because Mesa does not

properly challenge the court's determination that the restriction was content

neutral, we apply that standard as well. [4] Then we examine the interests

---

[4] Defendants prohibited Mesa from speaking at the meeting because he might talk about personnel and litigation matters involving Luis Cardoza. (As discussed later, neither defendants nor the district court ultimately relied on the alleged lack of specificity as the content-neutral reason for prohibiting Mesa's speech.) Although this would appear to be a content-based restriction, the district court seemed to have two reasons for concluding it was not. As part of its discussion of significant government interests, the court noted that "'public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business.'" District court order at 11 (quoting *City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 176 n.8 (1976)). We question whether the *City of Madison*'s broad dicta would apply to this situation due to the lack of notice of any subject-matter limitations. The commission meeting was an open meeting with no previously announced restrictions on topics of discussion. Personnel matters, at least, had been discussed at prior meetings without any indication that that topic was out of bounds. Indeed, there is no evidence that any limitation on subject matter existed until after Mesa's planned presentation was placed on the original meeting agenda.

(continued...)

defendants contend are served by the regulation to see whether they are

significant. *See Summum*, 130 F.3d at 913.

**A.**

---

[4](...continued)

The district court also concluded that defendants' actions were content neutral because Mesa had not shown that their actions "resulted from disapproval of Plaintiff's message." District court order at 10. Although as we discuss later, we disagree with the district court regarding whether Mesa demonstrated disapproval of his message, for now we note only that the district court seems to have confused content-based regulation with viewpoint discrimination. Viewpoint discrimination is a form of content discrimination, but not all content-based regulation is viewpoint regulation. As one commentator has explained,

> [a] content-based regulation either explicitly or implicitly presumes to regulate speech on the basis of the substance of the message. A viewpoint-based law goes beyond mere content-based discrimination and regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express. Viewpoint discrimination is a subset of content discrimination; all viewpoint discrimination is first content discrimination, but not all content discrimination is viewpoint discrimination.

1 Rodney A. Smolla, *Smolla and Nimmer on Freedom of Speech* § 3:9 (1998) (footnotes omitted); *see also Baugh v. Judicial Inquiry & Review Comm'n*, 907 F.2d 440, 444 (4th Cir. 1990). Thus, neither disagreement with content nor improper censorial motive is necessary for regulation of speech to be content based. *See Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991).

Because Mesa did not properly raise the issue of whether the prohibition on his speech was content neutral, and because we conclude the prohibition fails to pass constitutional muster under even the lower scrutiny standard applicable to content-neutral speech, we need not decide whether the district court correctly found the regulation of Mesa's speech content neutral.

The significant interest posited by defendants and accepted by the district court was the potential discussion of a "personnel or litigation matter involving Grant County." District court's order at 11. We cannot agree that defendants demonstrated that this is a significant government interest. [5]

The basis for defendants' stated interest in preventing Mesa's speech on personnel and litigation matters is two exceptions to New Mexico's Open Meetings Act, N.M. Stat. Ann. § 10-15-1 (Michie 1978), which generally requires that the commission's meetings be open to the public. Exception H(2) applies to "limited personnel matters," which is defined to mean "the discussion of hiring, promotion, demotion, dismissal, assignment or resignation of or the investigation or consideration of complaints or charges against any individual public employee; provided further that this subsection is not to be construed as to exempt final actions on personnel from being taken at open public meetings." Exception H(7) applies to "meetings subject to the attorney-client privilege pertaining to threatened or pending litigation in which the public body is or may become a participant."

---

[5] This is a legal rather than factual question. *See White House Vigil for the ERA Comm. v. Clark*, 746 F.2d 1518, 1528-29 (D.C. Cir. 1984); *cf. Revo v. Disciplinary Bd. of the Supreme Court*, 106 F.3d 929, 932 (10th Cir. 1997) (appellate court makes independent review of record in First Amendment cases, including de novo review of issues that in other settings would be considered factual).

The commissioners may well have an interest in discussing among themselves sensitive personnel or litigation matters, and the exceptions allow them to do that in certain situations. It is difficult to see, however, how that interest translates into a significant interest in restricting the public's ability to present its views on personnel or litigation matters at a public meeting. The performance of public employees and the handling of employment-related litigation can be important matters of public concern. [6] We do not read the Open Meetings Act to require the commissioners to discuss, or allow discussion of, such matters only at closed meetings. It does not require them to say or do anything in response to a public comment on such matters at an open meeting-- they can just sit and listen and then discuss matters falling within the exceptions among themselves at a closed meeting. In fact, the Act does not require the commissioners to allow the public to speak at its meetings, but instead, only requires them to allow the public to "attend and listen." *See* § 10-15-1.A. Thus,

---

[6]    Indeed, Mesa wanted to present his views on these matters of public concern directly to the political body responsible for them. "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. For speech concerning public affairs is more than self-expression; it is the essence of self-government." *Burson v. Freeman*, 504 U.S. 191, 196 (1992) (quotations omitted); *see also FCC v. League of Women Voters*, 468 U.S. 364, 381 (1984) ("[E]xpression on public issues has always rested on the highest rung of the hierarchy of First Amendment values.") (quotation omitted).

-11-

the Act itself did not turn the commission meeting into a designated public forum. That status apparently resulted from the commission's intentional practice and tradition of allowing public comment at the meetings.

In short, the Open Meetings Act seems irrelevant to the question of what interest is served by restricting *the public's* right to speak on personnel and litigation matters at a meeting open to the public.[7] We therefore conclude that defendants failed to identify a significant government interest justifying their prohibition of Mesa's speech at the commission meeting, and that the district court erred in granting summary judgment in defendants' favor.

---

[7] Defendant Amland seems to have recognized the problems with restricting Mesa's speech on this basis, for in his legal memo to the commissioners regarding Mesa's agenda item, he stated:

> If Mr. Mesa wishes to bring up personnel matters or even matters concerning present or threatened litigation involving the County, he may have a constitutional right to do so since the Commission cannot regulate the content of speech when it allows citizens to participate in meetings. Of course, to the extent that a citizen's subject matter concerns litigation involving the County, I would advise the Commission itself not to discuss this matter in open session.

Appellees' App. at AA-35.

**B**.

Except possibly with respect to topics such as obscenity, viewpoint

discrimination is almost universally condemned and rarely passes constitutional

scrutiny.

> The government bears a particularly heavy burden in justifying
> viewpoint-based restrictions in designated public forums. Viewpoint
> discrimination is an egregious form of content discrimination.
> Content-based restrictions are subject to strict scrutiny. Viewpoint-
> based restrictions receive even more critical judicial treatment.

*Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1279 (10th Cir. 1996)

(quotations and citations omitted). Although viewpoint discrimination was the

focus of Mesa's claim and argument in the district court, the court never

mentioned it in granting summary judgment against Mesa. We conclude the

evidence supports an inference, sufficient to withstand summary judgment, that

the restriction on Mesa's speech resulted from viewpoint discrimination.

Minutes of commission meetings and other evidence support the inference,

if not the fact, that everyone relevant to this case knew who Luis Cardoza was and

why Mesa would want to talk about him at a commission meeting. At a

commission meeting in January 1993, when Mesa was a commissioner, the

commission voted 2-1 to terminate Cardoza as county manager. Mesa was

strongly in favor of Cardoza's termination. Defendant Serna, who had just been

defeated in his reelection bid for commissioner, supported Cardoza, as did a

-13-

number of other individuals, and the issue was a hot topic at subsequent meetings through September 1993. At a number of these meetings, Serna spoke, or tried to speak but was sometimes prevented by the commission, [8] in support of Cardoza and questioned the commission's decision to terminate him. Serna and Santa Maria signed a petition to reinstate Cardoza. Mesa wrote newspaper articles, in the *El Reportero* with a circulation of about 1000 copies, critical of Cardoza, and at one meeting he told Serna to go read *El Reportero*, apparently to find out why they terminated Cardoza.

In January 1995, apparently at their first meeting after having been elected commissioners, Serna and Santa Maria passed motions (on 2-1 votes) terminating the county manager and hiring Luis Cardoza as interim county manager. Mesa, who was no longer on the commission, then submitted his proposed agenda item regarding "Luis Cardoza," and he was initially placed on the agenda for the next meeting. Defendants ostensibly removed him from the agenda because his topic was not specific enough. However, they never asked him to be more specific, and in fact, were concerned that he might talk about personnel and litigation matters involving Cardoza, showing that they knew the likely content of his speech despite his alleged lack of specificity. (Mesa stated at his deposition that he was

---

[8] Ironically, Serna later wrote to the Albuquerque office of the American Civil Liberties Union requesting an investigation into the commission's denial of the public's right to speak at meetings, mentioning Mesa by name.

going to be critical of Cardoza's past performance.)  With respect to defendants' contention that Mesa was not specific enough, Mesa presented several examples of previous agenda items that he contends were no more specific.  The defendants (and the district court) do not challenge Mesa's contention that these topics are equally nonspecific--they contend only that these topics did not involve personnel or litigation matters.   *See* Appellees' Br. at 10.

Viewing the evidence and drawing reasonable inferences in Mesa's favor, we conclude that (1) defendants knew what Mesa planned to say by stating he wanted to talk about Luis Cardoza, (2) they knew Mesa would be critical of Cardoza and of them, since they supported Cardoza, and (3) stating that his agenda item was not specific enough was a pretext for viewpoint discrimination. Additionally, the other express reasons for not allowing Mesa to speak were of such recent vintage--nonexistent until Mesa said he wanted to talk about Cardoza--and such a break with past traditions--Serna and others had been allowed to talk as members of the public about Cardoza's firing--that they further support a finding of pretext.  We thus conclude that this evidence of viewpoint discrimination provides another basis for rejecting defendants' summary judgment motion.

**III**.

-15-

In summary, we conclude that on the record before us, defendants have failed to show a significant government interest in prohibiting Mesa's speech at the commission meeting and that there is evidence they impermissibly restricted Mesa's speech based on his viewpoint. The district court erred in granting summary judgment in their favor. Therefore, the judgment of the district court is REVERSED, and the case is REMANDED for proceedings consistent with this opinion.