# United States Court of Appeals
## For the First Circuit

No. 07-1876

MIRIAM CURNIN; THOMAS F. CURNIN,

Plaintiffs, Appellants,

v.

TOWN OF EGREMONT; THOMAS GAGE, Town Moderator; BRUCE TURNER,
Board of Selectmen; PHILIP REILLY, Board of Selectmen; MARY
BRAZIE, Board of Selectmen,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell and Selya, Senior Circuit Judges.

Landis C. Best with whom Judith C. Knight, Joseph H.
Zwicker, Choate Hall & Stewart LLP, Nicholas Boski, and Cahill
Gordon & Reindel LLP were on brief for appellants.
Nancy Frankel Pelletier with whom David S. Lawless and
Robinson Donovan, P.C. were on brief for appellees.

November 29, 2007

**LYNCH**, **Circuit Judge**.  This case raises First Amendment questions about limiting the participation of non-voters at a New England town meeting.

Miriam and Thomas Curnin, who own property but are not registered to vote in the town of Egremont, Massachusetts, appeal from the district court's refusal to grant a preliminary injunction mandating that they be permitted to speak at Egremont's town meeting.  The Curnins contend that the town meeting is a designated public forum and Egremont's policy of permitting non-voters like themselves, who own property and pay taxes but are not town meeting members, to speak only at the discretion of the town meeting and its moderator violates their First Amendment rights.

We hold that forum analysis is inapposite because the town meeting is a legislative body in deliberation.  The Curnins are not registered to vote in Egremont and therefore are not town meeting legislators.  The First Amendment does not give non-legislators the right to speak at meetings of deliberating legislative bodies, regardless of whether they own property or pay taxes.

We also reject the Curnins' arguments that Egremont has engaged in viewpoint discrimination and that the First Amendment is violated by the discretion vested in the town meeting moderator to recognize speakers, including individuals not members of the town

meeting.  We affirm the district court's denial of a preliminary injunction.

I.

The New England town meeting is a special form of government dating back to the colonial era and often considered an exemplar of pure democracy.  See R. Tilden, Town Government, 38 B.U. L. Rev. 347, 348 (1958).

Town meetings in colonial times were charged with administrative and judicial as well as legislative duties.  R. Johnson et al., Town Meeting Time: A Handbook of Parliamentary Law 4 (3d ed. 2001).  Membership in town meetings was limited to those who belonged to the established church and owned the requisite amount of property.  Tilden, supra, at 356.  Attendance was compulsory, and those who arrived late were punished with a fine. Johnson et al., supra, at 3.

Other forms of government have emerged to carry out local administrative and judicial functions since the colonial era.  Id. at 4.  But town meetings continue to exist in New England as a town's legislative arm and are responsible for the traditional legislative functions of making laws and controlling spending.  Id. One commentator notes that a town meeting's "votes in municipal government correspond to those of the General Court [state

-3-

legislature] in the state government and of the Congress in the national government."[1]  Tilden, supra, at 349.

Massachusetts law requires that, unless otherwise provided, each town must hold an annual town meeting in February, March, April, or May.  Mass. Gen. Laws ch. 39, § 9.  Special town meetings are called if a question arises requiring legislative action before the next annual meeting.  At least seven days before annual town meetings and at least fourteen days before special town meetings, a town's selectmen must issue a warrant setting forth the time and location of the meeting and the subjects to be addressed.  Id. § 10.  Each town sets its own quorum for town meeting business.  Id. § 13.  A moderator elected by the town's voters is responsible for "presid[ing] and regulat[ing] the proceedings" and "decid[ing] all questions of order."  Id. §§ 14, 15.  All of a town's registered voters can speak and vote at town meeting, unlike the

---

[1]  That correspondence admits of one distinction.  The town meeting may embody either direct democracy or representative democracy; the other two embody representative democracy.  In the early twentieth century, some towns started to find open town meetings "unwieldy and often unrepresentative of a cross-section of the town population" and therefore replaced them with representative town meetings.  Johnson et al., supra, at 6.  In a town with a representative meeting, only elected town meeting members can vote at town meeting, although all registered voters may attend.  Id. at 7.  Today, a town with a population over 6,000 may establish a representative town meeting.  Mass. Const. art. LXXXIX.

In towns using a representative town meeting, registered voters who are not town meeting members can speak "subject to conditions prescribed by the meeting."  Sec'y of the Commonwealth, Citizen Info. Serv., Citizen's Guide to Town Meetings, available at http://www.sec.state.ma.us/cis/cistwn/twnidx.htm.

-4-

colonial requirements tying town meeting participation to property ownership and church membership. Id. § 18; Sec'y of the Commonwealth, Citizen Info. Serv., Citizen's Guide to Town Meetings, available at http://www.sec.state.ma.us/cis/cistwn/ twnidx.htm [hereinafter Citizen's Guide]. Non-voters can attend and can speak "at the discretion of the moderator or Town Meeting." Citizen's Guide, supra.

Egremont is a small town in western Massachusetts that employs an open town meeting, not a representative town meeting, as its legislative body. As of 2006, it had a population of 1032, with 875 registered voters.

Egremont's bylaws supplement the state requirements by providing that all warrants be posted in at least four public places within the town at least fourteen days before the town meeting is scheduled to occur; if a special town meeting is called, the selectmen must place a synopsis of the warrant in the local newspaper at least fourteen days before the meeting. Sixty voters must be present at town meeting in order for a quorum to exist.

Egremont's current moderator, Thomas Gage, has adopted a policy of separating voters from non-voters by giving voters colored placards. (Under a previous moderator, non-voters were seated in a separate section of the room.) Unless constrained by a contrary vote of the town meeting members, the moderator has the discretion to determine whether non-voters who wish to speak may do

so.  The moderator follows the rules of order set forth in <u>Town Meeting Time</u>.  For example, if there is an appropriate motion to call the vote, there is no further discussion before the vote. Thus, even the right of town meeting members to speak is qualified.

The Curnins own a house and pay taxes on it and approximately 120 acres of land in Egremont, but they are not registered to vote there.  They also have a residence in Larchmont, New York, where they are registered to vote.

The Curnins point to three specific town meetings at which they assert they were prevented from speaking on issues important to them as taxpayers.  At the beginning of a special town meeting to consider a proposed sewer project on May 26, 2005, a motion was made to allow non-voters to speak.  This motion failed by a vote of 100 to 67.  The sewer proposal was defeated, in a quick succession of motions, without any discussion or debate by either voters or non-voters.

At the annual town meeting on May 2, 2006, Thomas Curnin and another non-voter rose to speak on a proposal to amend the town's zoning laws to limit new commercial space to 10,000 square feet.  Moderator Gage told the other non-voter who wished to speak to wait and that he would be considered later. At that point, town meeting members called for a vote on the zoning law amendment; there were no further comments from either voters or non-voters.

At a special town meeting on June 21, 2006, voters considered whether to spend $350,000 on a new fire truck for the town. Curnin asserts that he wanted to speak about the propriety of the bid the town received for the truck, although he does not seem to have made his desire to speak known. Moderator Gage called for a vote regarding the purchase of the truck after asking two voters who were about to leave to delay their exit because a quorum would not exist without them.

On May 2, 2006, the Curnins sought declaratory and injunctive relief in federal district court under 42 U.S.C. § 1983, claiming that Egremont's policy of not permitting non-voters who own property and pay taxes to speak at town meetings violates their rights under the First and Fourteenth Amendments of the United States Constitution and similar provisions of the Massachusetts Constitution.[2]

On April 13, 2007, the Curnins filed a motion for a preliminary injunction to force Egremont to permit them to speak at its annual town meeting on May 1, 2007. The district court denied the injunction in an oral opinion issued on April 25, 2007. The district court emphasized that it did not "see how the ownership of property and the payment of taxes gives someone who is a nonvoting

---

[2] The named defendants are the Town of Egremont; Gage, Egremont's town meeting moderator; and the town's three selectmen, Mary Brazie, Bruce Turner, and Philip Reilly. Reilly has since died and been dismissed from the case.

member of the town a status equal to voting members when it comes to speaking at town meetings."  The district court also expressed skepticism about the Curnins' arguments that Egremont engages in viewpoint discrimination by allowing voters but not non-voters to speak and that the discretion in the moderator to decide when a non-voter can speak creates a First Amendment violation.  This timely appeal followed.

Although the May 2007 town meeting has now passed, Egremont's policy has not changed, nor has the Curnins' desire to speak at future town meetings.

II.

We review the denial of a preliminary injunction for abuse of discretion.  <u>Rivera-Feliciano</u> v. <u>Acevedo-Vila</u>, 438 F.3d 50, 63 (1st Cir. 2006).  There are no questions of fact in dispute, so the only issues are ones of law.

The district court correctly considered four factors in determining whether to issue a preliminary injunction: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  <u>Bl(a)ck Tea Soc'y</u> v. <u>City of Boston</u>, 378 F.3d 8, 11 (1st Cir. 2004) (quoting <u>Charlesbank Equity</u>

Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)) (internal quotation marks omitted).

We turn to whether the Curnins have demonstrated a probability of success on their First Amendment claims. We engage in de novo review in First Amendment cases of the district court's conclusions of law and mixed questions of law and fact. Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 567 (1995).

The Curnins argue that the district court erred by not analyzing Egremont's town meeting using the methodology of forum analysis. Forum analysis primarily concerns the use of government property for speech, and the extent to which government can restrict speech turns on the category to which property is assigned. E. Chemerinsky, Constitutional Law 1126-27 (3d ed. 2006). The Supreme Court has distinguished several types of forums, including traditional public forums, designated public forums, and non-public forums. Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 76 (1st Cir. 2004). This circuit has used the phrase "limited public forums" to describe non-public forums, id. at 76 n.4, and we adhere to that usage here.

The Curnins first argue that Egremont's town meeting qualifies as a designated public forum for two reasons. First, they argue that Egremont's town meetings must be public forums

because they are open to the public,[3] take place on government property, and involve important matters of public interest. Second, they argue by analogy that other courts have held that municipal-level public meetings are designated public forums and therefore town meetings are as well. They further argue that even if the town meeting is not considered a designated public forum but only a limited public forum, Egremont's policy cannot satisfy the corresponding level of scrutiny.

The Curnins make a second and separate series of First Amendment arguments under the rubric of viewpoint-related discrimination. They assert that the categorical preclusion of those who are not town meeting members from the right to speak is a form of viewpoint discrimination. They also argue that Egremont's policy of letting non-voters speak only at the discretion of the moderator is unconstitutional. They further argue that this discretion raises the prospect of possible viewpoint discrimination by the moderator in his decision to recognize certain people and not others.

---

[3] The Curnins are incorrect in their subsidiary assertion that Massachusetts's open meeting requirement applies to town meetings. It is true that state law provides that "[a]ll meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting," Mass. Gen. Laws ch. 39, § 23B, but town meetings are specifically excluded from the definition of governmental bodies, id. § 23A (providing in the definition of "governmental body" that "this definition shall not include a town meeting"). However, the Curnins are correct in that town meetings are open to the public. Citizen's Guide, supra.

The Curnins' first group of arguments, based on forum analysis, is incorrect under First Amendment doctrine. Forum analysis of any sort is inapposite in the context of complaints about the deliberations of a legislative body, as Egremont's town meeting is. We reject forum analysis entirely as an inappropriate model to apply to the deliberations of a town legislative body.[4] The registered voters who speak and vote at Egremont's town meeting do so in their capacity as legislators. Since they are not registered voters, the Curnins are not legislators. Non-legislators have no First Amendment right to address sessions of deliberating legislative bodies.

The Supreme Court has never extended First Amendment forum analysis to a deliberating legislative body or to the body's rules about who may speak. While no Supreme Court case is directly on point, the Court has addressed the underlying issue of the public's ability to address government policymakers:

> The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy. . . . Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. . . . Public officials at all levels of government daily make

---

[4]    Even were we to apply the forum analysis model, we would hold, similar to the Supreme Court's analysis in United States v. Am. Library Ass'n, 539 U.S. 194 (2003), that "the public forum principles on which [plaintiffs rely] are out of place in the context of this case. [Town meetings are] neither a traditional nor a designated public forum." Id. at 205.

> policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.

Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 283-84 (1984). In Knight, the Court rejected First Amendment claims by plaintiffs that they had a right to force officers of the state, acting in an official capacity, to listen to them in a particular formal setting. Id. at 283.

The Curnins' next forum-related argument, which proceeds by analogy, fails because the cases they cite involve municipal-level public meetings that allowed members of the public to speak during designated portions of the meetings but shut out certain speakers during those portions. See Mesa v. White, 197 F.3d 1041, 1043 (10th Cir. 1999) (former county commissioner prevented from speaking during public comment period of county commission meeting); Piscottano v. Town of Somers, 396 F. Supp. 2d 187, 193-94 (D. Conn. 2005) (resident concerned about town official's behavior prevented from speaking during public comment portion of Board of Selectmen meeting); Scroggins v. City of Topeka, 2 F. Supp. 2d 1362, 1365-66 (D. Kan. 1998) (resident cut off while attempting to criticize mayoral appointment during public comment portion of city council meeting); Pesek v. City of Brunswick, 794 F. Supp. 768, 774 (N.D. Ohio 1992) (resident prevented from speaking during public comment portion of city council meeting on grounds that he was also

-12-

a town employee). The Curnins have not identified any comparable public comment period at Egremont's town meeting.

More generally, the fact that the town meeting is a deliberating legislative body implicates the principle that courts are reluctant to interfere with the rules and procedures adopted by legislatures. Under the Speech or Debate Clause of the U.S. Constitution, Article I, section 6, there are constitutional separation of powers protections for Congress. See, e.g., Eastland v. U.S Servicemen's Fund, 421 U.S. 491, 502 (1975) ("The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently."); Gravel v. United States, 408 U.S. 606, 616 (1972); see also L. Tribe, American Constitutional Law 370 (2d ed. 1988). This immunity extends to injunctive relief. Eastland, 421 U.S. at 503. No explicit federal constitutional protections cover state or local legislative bodies. However, there are still federalism and separation of powers concerns, which have led to the adoption of similar immunities for state legislators. See Knight, 465 U.S. at 285; Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 629 (1st Cir. 1995) (citing Supreme Court of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 732-33 (1980)).

Regardless of whether it could be of constitutional dimension, no concern is raised in this case of plaintiffs having been excluded from any meaningful opportunity to make their views

known to the voters. The Curnins concede there are alternative ways to make their views known, but argue that the most effective method of influencing votes is speaking at town meeting. They argue that because there is no guarantee which registered voters will attend a particular town meeting, they cannot influence the town meeting because they cannot be certain that the voters they lobby will ultimately attend. Still, however, there are a wide variety of ways to lobby town meeting members who are likely to attend outside the meeting itself, and uncertainty as to individual attendance is a problem shared with legislators at any level of government, including Congress.

The Curnins have a number of other means of influencing local decisionmaking, both formal and informal, available to them. All members of the public can speak at meetings of Egremont's Board of Selectmen, and Thomas Curnin has in fact spoken at such meetings in the past. The selectmen play a significant role in town governance in general as well as in town meetings in particular: they issue the warrants that determine town meeting agendas and make recommendations to town meeting regarding each item in the town's budget. The Curnins are also free to attend and speak at the public forums that are held in Egremont from time to time for discussion of important issues. For instance, such public forums were held on the proposed sewer system prior to the town meeting at which it was discussed. Additionally, the Curnins have less formal

means of influence available to them, including writing letters to the editor of the local newspaper, taking out advertisements in the local newspaper, and sending mailings to voters.

There is no doubt the Curnins have a legitimate interest in attempting to influence the policy choices made by the town of Egremont. That does not create a right to speak before a legislative body. Our analysis does not change, as the Curnins contend, because Egremont's town meeting embodies direct rather than representative democracy; members of the town meeting are still legislators.

We turn to the viewpoint discrimination argument, which has several levels. The Curnins first argue that Egremont engages in viewpoint discrimination by granting different speaking rights to voters and non-voters. This claim fails. The distinction between those who are and are not town meeting members is not based on viewpoint at all. In fact, the distinction between giving qualified speaking rights to legislators, but not to non-legislators, is entirely rational. The legislative body has limited time to get its work done. Indeed, the distinction made is entirely content-neutral.[5] In their second level of potential discrimination claims based on viewpoint, the Curnins argue that

_____

[5] The equal protection claim asserted by the Curnins adds nothing to their case. This case also does not involve restrictions based on the subject matter or nature of speech in a public forum. Cf. Carey v. Brown, 447 U.S. 455, 459-61 (1980). Likewise, their due process claim is futile.

-15-

the moderator has an impermissible amount of discretion, in violation of the First Amendment. They rely on an analogy to the licensing context, where the Supreme Court has struck down schemes giving public officials excessive discretion in making decisions such as when to issue permits for demonstrations and parades. See, e.g., City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 772 (1988) (striking down scheme giving mayor complete discretion in deciding whether to issue permits for newspaper dispensing machines on public property). These cases are different in kind. They do not involve speech before deliberating legislative bodies.

In such bodies, some measure of discretion is inherent in the role of the moderator. The moderator is charged with facilitating an efficient and orderly town meeting. As the Massachusetts Supreme Judicial Court put it: "A moderator must make judgments on the spot. He must deal with disputants without the protective formality of a judicial proceeding, and he must contend with voters who are not necessarily experienced in the law or conversant with town meeting procedures." MacKeen v. Town of Canton, 399 N.E.2d 22, 24 (Mass. 1980).

To the extent the Curnins suggest that the moderator's discretion could enable him to engage in viewpoint discrimination, there is no evidence of any such behavior here. No evidence has been presented to suggest that Egremont is attempting to "give one side of a debatable public question an advantage in expressing its

-16-

views," First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 785 (1978).  We need not consider whether there is any cognizable constitutional claim raised if a moderator of a legislative body were to allow non-voters to speak for a limited period but then call on speakers representing only one side of an issue.  Nor is there any evidence that the government was preferring only the views of the present administration of the town.  The facts raise neither claim.

The judgment of the district court denying preliminary injunctive relief is affirmed.